175 P.3d 748

Ted A. SWANSON, Plaintiff–Respondent,

v.

BECO CONSTRUCTION CO., INC.,
Defendant–Appellant.

No. 32827.

Supreme Court of Idaho,
Pocatello, October 2007 Term.

Nov. 23, 2007.

McGrath Meacham Smith Seamons, Idaho Falls, for appellant. Bryan D. Smith argued.

Cooper & Larsen, Pocatello, for respondent. James D. Ruchti argued.

EISMANN, Chief Justice.

This is an appeal from the grant of summary judgment holding that an equipment lease agreement was not ambiguous and that an alleged usage of trade was not applicable.

We affirm the judgment of the district court, as modified, and award attorney fees on appeal.

## I. FACTS AND PROCEDURAL HISTORY

In the summer of 2004, BECO Construction Co., Inc., (BECO) was working on a government construction contract in downtown Pocatello, and Ted A. Swanson, d/b/a Swanson Construction (Swanson) had been hired to perform some of the work on that project. Swanson had been in the construction business for ten or eleven years, doing mostly excavation and hauling. He owned various items of construction equipment, including a Bobcat skid steer loader (Bobcat).

BECO had been using a rented skid steer loader, but had repeated mechanical problems with that loader. It approached Swanson to see whether he would rent his Bobcat to BECO. Swanson was not in the business of leasing his equipment, but agreed to do so. He understood that BECO would be using the Bobcat for a week or so until the other skid steer it was renting was repaired. To determine an appropriate charge, Swanson contacted an equipment rental company to find out what that company charged per day for a skid steer loader. He was told $300 plus tax, and so decided to charge BECO $300 per day. On August 27, 2004, the parties entered into a hand-written lease for the Bobcat. The lease provided that its term would be from "8–27–04 until finished" and that BECO was to pay rent of $300 "per working day." The lease also required Swanson to deliver the Bobcat "clean, serviced + full of fuel in need of no repairs," and it required BECO to return it "in same condition."

BECO had the Bobcat in its possession from August 27 through October 18, 2004. Swanson had twice contacted BECO wanting to have his Bobcat returned, and each time he was told that BECO was still using it. On October 18, 2004, at 8:00 p.m., he went to the jobsite and retook possession of his Bobcat.

Swanson billed BECO $13,200 for the use of his Bobcat. BECO refused to pay, and on December 20, 2004, Swanson filed this action

seeking to recover from BECO the sum of $13,200 in unpaid rent, damages for failure to return the Bobcat in the condition required by the lease, and prejudgment interest. On February 3, 2005, BECO paid $6,219 as the maximum amount it believed it should owe under the lease.

On August 25, 2005, Swanson moved for summary judgment. He supported the motion with his affidavit in which he listed the forty-four days for which he contended he was entitled to rental payments and asserted that it would cost $590 in service and new tires to put the Bobcat in the same condition it had been when leased. In his supporting brief, Swanson argued that "working day" meant every day that BECO was working on the job site.

BECO responded by arguing that the term "working day" was ambiguous. It submitted the affidavit of its president in which he stated that the Idaho Transportation Department uses a different definition of "working day" in its contracts. BECO's president also asserted that Swanson was entitled to only $219 for BECO's failure to return the Bobcat in the same condition it had been when leased.

After oral argument on the motion, the district court on October 6, 2005, granted Swanson partial summary judgment regarding the meaning of the term "working day." The district court stated that it was unambiguous and meant the days BECO was working on the jobsite. It also ordered Swanson to submit an affidavit showing how many days BECO was working on the jobsite during the lease term. The court denied summary judgment on the claim seeking damages for the failure to return the Bobcat in the condition required by the lease.

On October 12, 2005, Swanson filed his second affidavit, stating in essence that BECO was working on the job site on each of the forty-four days listed in his prior affidavit. On November 1, 2005, the district court granted Swanson partial summary judgment on the issue of unpaid rent. It held that Swanson was entitled to $13,200 in rent (44 days × $300 per day), less the $6,219 paid by BECO after the lawsuit was filed, for a net judgment of $6,981 in unpaid rent. It held

that the damages claimed regarding the condition of the Bobcat would have to be tried.

On November 18, 2005, Swanson moved to dismiss its claim for the remaining damages. The district court granted the motion and entered judgment for Swanson in the sum of $6,981 plus costs and attorney fees in the sum of $4,207, for a total judgment of $11,188.

BECO filed three successive motions for reconsideration, which the district court denied. The court also awarded Swanson additional costs and attorney fees for responding to those motions. The final judgment entered in favor of Swanson totaled $13,358.65. BECO then timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in holding that the phrase "per working day" is unambiguous?

2. Was there a genuine issue of material fact as to the number of working days that BECO had the Bobcat during the term of the lease?

3. Did the district court err in refusing to construe the parties' lease as including a practice among commercial equipment lessors of discounting the daily rental charge when the equipment is kept by the lessee for a period longer than one week?

4. Is either party entitled to an award of attorney fees on appeal?

## III. ANALYSIS

### A. Did the District Court Err in Holding that the Phrase "Per Working Day" Is Unambiguous?

■ Ken Wright, the project supervisor for BECO, asked Swanson if he would lease BECO the Bobcat. Swanson wrote out a lease on a work order form he used in his business. The handwritten portion of the lease agreement stated as follows:

Rent 1 Bobcat 773 SkidSteer to start 8–27–04 until finished. Machine to be delivered clean serviced + full of fuel in need of no repairs and to be returned in same condi-

tion. Becco [sic] responsible for all repairs while rented. Original hours as of 8–27–04 (1052). Tires + 60% or 7/8. Renter to keep machined [sic] serviced.

(per day $300 [00]

Rent to be per working day.

Swanson testified in his deposition that he inserted the words "per working day" because those words were in lease contracts he signed when he leased equipment. The record does not indicate that Swanson and Wright ever discussed the meaning of the term "working day." Swanson simply wrote the lease agreement and Wright signed it on behalf of BECO, agreeing that BECO would pay Swanson $300 per working day for the lease of the Bobcat. BECO contends that the term "working day" is ambiguous.

"Whether a contract is ambiguous is a question of law over which we exercise free review." *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005). Ambiguities can be either patent or latent. "Idaho courts look solely to the face of a written agreement to determine whether it is [patently] ambiguous." *Ward v. Puregro Co.*, 128 Idaho 366, 369, 913 P.2d 582, 585 (1996). *Accord, Valley Bank v. Christensen*, 119 Idaho 496, 808 P.2d 415 (1991). "A latent ambiguity is not evident on the face of the instrument alone, but becomes apparent when applying the instrument to the facts as they exist." *In re Estate of Kirk*, 127 Idaho 817, 824, 907 P.2d 794, 801 (1995). BECO does not contend that there is any latent ambiguity regarding the parties' equipment lease. It contends that the term "working day" is patently ambiguous.

To determine whether a contract is patently ambiguous, a court looks at the face of the document and gives the words or phrases used their established definitions in common use or settled legal meanings. *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 70 P.3d 664 (2003). For a contract term to be ambiguous, there must be at least two different reasonable interpretations of the term, *Armstrong v. Farmers Ins. Co. of Idaho*, 143 Idaho 135, 139 P.3d 737 (2006), or it must be nonsensical, *Purdy v. Farmers Ins.*

*Co. of Idaho*, 138 Idaho 443, 65 P.3d 184 (2003).

The term "working day" has an established definition. It means "a day when work is normally done as distinguished from Sundays and legal holidays." *Webster's Third New Int'l Dictionary of the English Language*, 2635 (Philip Babcock Gove et al. eds., G. & C. Merriam Co.1971). There is nothing on the face of the parties' agreement indicating that they intended some other meaning. Giving the words "working day" their normal meaning would not conflict with any other provisions of the written lease or create any uncertainty as to its meaning. There is nothing in the context of the lease that would indicate that the term should be given a different meaning.

BECO argued to the district court that the term "working day" was patently ambiguous for two reasons. First, BECO submitted an excerpt from the Idaho Transportation Department's "Standard Specifications for Highway Construction" that gave a different definition of "working day." The excerpt from the Transportation Department's standard specifications stated as follows:

**Working Day** Any day except Saturdays, Sundays, and State recognized legal holidays on which weather or other conditions not under control of the Contractor will permit activities on the critical path to proceed for at least 5 hours of the day. Activities shall include, but are not limited to: engineering, surveying, permitting, submittals, approvals, procurement, fabrication, and construction.

Parties are certainly free to include in their contracts definitions of words used therein, even if those definitions vary from the normal meanings of the words. In its contracts, the Transportation Department can define the term "working day" any way it desires. However, that definition has no relevance here. There is nothing on the face of the parties' written lease indicating that they intended to incorporate the Transportation Department's definition into their agreement. The Transportation Department's definition is irrelevant to this case. Even though irrelevant, the Transportation Department's definition supports the dictionary definition of

the term "working day." Under the Transportation Department's definition, a "working day" is not a day upon which work is actually done.

Second, BECO argued that Swanson's counsel gave two different meanings to the term during his oral argument on Swanson's motion for summary judgment. During that argument, Swanson's counsel stated, "Every day that they were out on the site is a working day. Whether they use the piece of equipment or not is irrelevant." Later in his argument, Swanson's counsel discussed three exhibits that were attached to Swanson's affidavit filed on August 25, 2005. Those exhibits were invoices listing the days for which Swanson was demanding payment. When asked by the district court where his client got the dates listed on the invoices, Swanson's counsel stated that the dates were "the dates that the piece of equipment was being used at this site." [1] Based upon these statements, BECO argued to the district court that the term "working day" could mean either every day that BECO was working on the job site or every day that it was actually using the Bobcat on the job site. Swanson's counsel responded that his answer to the district court's question should not be construed as an assertion that BECO had to actually use the Bobcat for it to be a "working day." He was just informing the court that Swanson was on the job site every day and saw BECO using the Bobcat on those days.

After the district court granted partial summary judgment on the ground that the term "working day" was not ambiguous, BECO deposed Swanson. In his deposition, Swanson initially stated that "per day" and "per working day" meant the same thing. In response to questioning, he clarified that "per day" and "per working day" were intended to distinguish between a daily charge and a charge based upon the number of hours the equipment was actually used, as shown by its hour meter. He testified that in his experience, commercial lessors of equipment charge per day rather than per

hour of actual use because a customer could keep the equipment for days without actually using it. When asked what a "working day" was, Swanson responded that it was a day during which work was done on the job, whether or not the leased equipment was actually used that day. He added it would not include Sundays unless arrangements had been made to work on Sunday.

 Swanson's understanding of the meaning of the term "working day" is not relevant if the lease agreement is unambiguous. The determination of whether a contract is ambiguous on its face must be decided by giving the words or phrases used their ordinary meanings. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 93 P.3d 685 (2004). A party's subjective, undisclosed interpretation of a word or phrase cannot make the contract ambiguous. If it could, then all contracts would be rendered ambiguous merely by a party asserting a misunderstanding of the meaning of one or more of the words used. The voluntary failure to read a contract does not excuse a party's performance. *Belk v. Martin*, 136 Idaho 652, 39 P.3d 592 (2001). Similarly, a party's failure to determine the ordinary meaning of the words used in a contract does not make it ambiguous.

 "The intent of the parties is determined from the plain meaning of the words." *Clear Lakes Trout Co., Inc. v. Clear Springs Foods, Inc.*, 141 Idaho 117, 120, 106 P.3d 443, 446 (2005). A contract is not rendered ambiguous on its face because one of the parties thought that the words used had some meaning that differed from the ordinary meaning of those words. As explained in 17A Am.Jur.2d, Contracts, § 348 (2004):

> If the language used by the parties is plain, complete, and unambiguous, the intention of the parties must be gathered from that language, and from that language alone, no matter what the actual or secret intentions of the parties may have been. Presumptively, the intent of the parties to a contract is expressed by the natural and ordinary meaning of their lan-

---

1. In his affidavit filed on August 25, 2005, Swanson did not state how he interpreted the term "working day, nor did he state that the Bobcat was actually being used on any of the days listed."

guage referable to it, and such meaning cannot be perverted or destroyed by the courts through construction, for the parties are presumed to have intended what the terms clearly state. Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent.

BECO did not contend that the term "working day" was a term of art within the construction industry. *See, J.R. Simplot Co. v. Rycair, Inc.*, 138 Idaho 557, 67 P.3d 36 (2003) (Parol evidence may be received to interpret a term of art in a contract). In fact, BECO did not present any relevant evidence as to an alternative definition of the term. When the term "working day" is given its ordinary meaning, the lease agreement is not ambiguous. Swanson is entitled to rent for every day of the lease term except Sundays and holidays.

**B. Was There a Genuine Issue of Material Fact as to the Number of Working Days that BECO Had the Bobcat During the Term of the Lease?**

On October 12, 2005, Swanson filed his second affidavit in which he listed the forty-four days for which he claimed entitlement to rent. He also stated that he had personal knowledge that BECO was working at the job site on each of those days. The only opposing evidence was the affidavit of BECO's president in which he stated that based upon his review of BECO's records, "BECO used the skidsteer loader less than 44 separate days." BECO contends on appeal that the affidavit of its president created a genuine issue of material fact as to the rent due under the equipment lease.

As stated above, the ordinary meaning of the term "working day" is every day except Sundays and holidays. From August 27 through October 18, 2004, there were forty-three working days.[2] The affidavit of BECO's president does not challenge the number of working days.

The district court based its award upon the assertion of Swanson's counsel that a work-

ing day was every day that BECO was working on the job site. Based upon Swanson's affidavit that BECO was on the job site working on forty-four days during the term of the lease, the court calculated the total rent due as $13,200. That was $300 too much. There were only forty-three working days during the term of the lease. Thus, Swanson was entitled to $12,900 in total rent. The amount of Swanson's judgment must be reduced by $300.

Even using the district court's definition of the term "working day," the affidavit of BECO's president did not create a genuine issue of material fact. BECO's president simply stated that BECO used Swanson's Bobcat less than forty-four separate days. He did not contest that BECO was on the job site on each of the forty-four days listed by Swanson in his second affidavit.

**C. Did the District Court Err in Refusing to Construe the Parties' Lease as Including a Practice Among Commercial Equipment Lessors of Discounting the Daily Rental Charge When the Equipment Is Kept by the Lessee for a Period Longer than One Week?**

In its first motion for reconsideration, BECO raised the issue that there was a usage of trade that would require Swanson to reduce the rental charge for his Bobcat. BECO contends that there is a usage of trade among commercial lessors of construction equipment to charge weekly and monthly rates that result in a per day rent that is less than the daily rental rate. In support of that contention, it provided the affidavit of a man who has managed an equipment rental business for six years. He stated that there is a custom and practice among commercial lessors of construction equipment to reduce the amount charged per day if the customer keeps the equipment for one week or longer. According to him, commercial lessors charge a daily rate, a weekly rate that results in a lesser charge per day than the daily rate, and a monthly rate that results in a lesser

2. The working days were August 27–28, 30–31; September 1–4, 7–11, 13–18, 20–25, 27–30; and October 1–2, 4–9, 12–16, 18. September 6 (La-bor Day) and October 11 (Columbus Day) were holidays.

charge per day than the weekly rate. He also stated that commercial lessors charge rent based upon the length of time the equipment is actually kept by the customer even if the customer originally agreed to pay a daily rate upon the assumption that the equipment would be returned in less than one week. There is no contention that there is a usage of trade among commercial lessors regarding the percentage of reduction in the per day rental charge when the customer keeps the equipment one week or longer.

Idaho Code § 28–1–303(e) provides that "the express terms of an agreement and any applicable ... usage of trade shall be construed wherever reasonable as consistent with each other." A "usage of trade" is defined as "any practice or method of dealing having such regularity of observance in a place, vocation, or trade as to justify an expectation that it will be observed with respect to the transaction in question." I.C. § 28–1–303(c). A usage of trade "is relevant in ascertaining the meaning of the parties' agreement, may give particular meaning to specific terms of the agreement, and may supplement or qualify the terms of the agreement," I.C. § 28–1–303(d), but it cannot conflict with the express terms of the agreement, I.C. § 28–1–303(e)(1).

BECO argues that the usage of trade among commercial lessors of construction equipment to give a discount in the rental charged per day when the customer keeps the equipment for one week or longer supplements the rental agreement between Swanson and BECO in this case. Assuming that the usage of trade among commercial lessors of construction equipment would apply to someone like Swanson who leased his equipment one time,[3] the district court did not err in holding that the claimed usage of trade did not apply in this case. Usage of trade cannot supplant the express terms of a contract. I.C. § 28–1–303(e)(1). The contract in this case provided, "Rent 1 Bobcat 773 SkidSteer to start 8–27–04 until finished .... rent [of $300] to be per working day." The express terms of the contract provide that the rent is $300 per working day during the term of the lease. The alleged usage of trade would conflict with, not supplement, the express terms of the parties' contract. Therefore, the district court did not err in holding that it does not apply in this case.

**D. Is Either Party Entitled to an Award of Attorney Fees on Appeal?**

Both parties seek attorney fees on appeal pursuant to Idaho Code § 12–120(3). They agree that because this is an action to recover in a commercial transaction, the prevailing party is entitled to an award of attorney fees. Because BECO did not prevail on this appeal, it is not entitled to an award of attorney fees. Swanson is the prevailing party on this appeal, and he is entitled to an award of reasonable attorney fees under that statute.

**IV. CONCLUSION**

The judgment of the district court must be modified by reducing it to $13,058.65. We affirm the judgment as modified and award Swanson costs, including a reasonable attorney fee, on appeal.

Justices BURDICK, J. JONES, W. JONES and HORTON concur.

---

3. A commercial lessor of equipment has an economic incentive to provide discounts for longer-term rentals in order to create a repeat-customer base among those who would routinely be renting equipment. No similar financial incentive exists for someone who is not in the business of leasing equipment and is not seeking repeat customers.