IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35606

POTLATCH EDUCATION ASSOCIATION
and DOUG RICHARDS,

               Plaintiffs/Appellants,

v.

POTLATCH SCHOOL DISTRICT NO. 285
and BOARD OF TRUSTEES, POTLATCH
SCHOOL DISTRICT NO. 285,

               Defendants/Respondents.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2010 Term

2010 Opinion No. 14

Filed: February 3, 2010

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

The ruling of the district court granting summary judgment is affirmed. Respondent's request for attorneys fees on appeal is denied.

John E. Rumel, Boise, for appellant.

Anderson, Julian & Hull, LLP, Boise, for respondents. Brian Julian argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

The Potlatch Education Association and Doug Richards, a teacher in Potlatch, Idaho, allege that the Potlatch School District breached the Master Agreement governing the terms of teacher employment in the district. They seek to compel the School District to classify as "professional leave" a day that Richards took off defending his final project in pursuit of his Master's Degree in Educational Administration.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Doug Richards is a music teacher for the Potlatch School District in Potlatch, Idaho. In May of 2007, he took a day off work to defend his final project toward his Master's Degree in Educational Administration from the University of Idaho at Coeur d'Alene. He requested that

1

the school principal classify the day off as "professional leave" under the Master Agreement between the Potlatch Education Association (PEA) and the School District, but the principal refused and instead classified the day as "personal leave." The PEA filed a grievance on Richards's behalf, but the Potlatch School District Board of Trustees ultimately affirmed the principal's decision.

Richards and the PEA ("Appellants") sued the School District and its Board of Trustees (collectively "School District") for breach of contract, seeking declaratory and injunctive relief, and moved for summary judgment. Both parties waived a jury trial. The School District filed a response and consented to the response being treated as a cross-motion for summary judgment. The district court granted summary judgment in favor of the School District.

On appeal, Appellants rely on the Master Agreement, which provides paid professional leave to teachers to "pursue professional development," so long as the teacher obtained written approval from the school principal. Appellants argue that Richards's degree in educational administration was a professional-development activity and that the Master Agreement obligated the School District to count his day off as a professional-leave day. The School District responds that the Master Agreement gives it discretion in granting permission to take professional leave, and that, because Richards is a music teacher, the School District properly exercised its discretion in good faith when it refused to grant Richards paid leave to pursue a degree that would enable him to switch into an administrative position.

### III. ISSUES ON APPEAL

1. Whether the district court properly granted summary judgment dismissing Appellants' claim for breach of contract.

2. Whether the School District is entitled to attorney fees on appeal.

### IV. STANDARD OF REVIEW

When this Court reviews a grant of summary judgment, it does so under the same standard employed by the district court. *Boise Tower Assocs. v. Hogland*, 147 Idaho 774, ---, 215 P.3d 494, 499 (2009). "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

2

of law." I.R.C.P. 56(c). Where the case will be tried without a jury, "the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures, Inc. v. Loucks Family Irrev. Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). This Court freely reviews the entire record before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record. *Id.*; *Walker v. Hollinger*, 132 Idaho 172, 176, 968 P.2d 661, 665 (1998).

## V. ANALYSIS

### A. The District Court Properly Granted Summary Judgment to the School District on the Breach of Contract Claim

When interpreting a contract, this Court begins with the document's language. *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 308, 160 P.3d 743, 747 (2007). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Interpreting an unambiguous contract and determining whether there has been a violation of that contract is an issue of law subject to free review. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605–06, 38 P.3d 1258, 1261–62 (2002). A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical. *Swanson v. Beco Constr. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact. *Bakker v. Thunder Spring-Wareham, L.L.C.*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005) (quotation omitted).

The Master Agreement describes several different types of leave available to teachers. Section 10.5 of the Master Agreement specifically addresses professional leave, and provides:

> Attendance at educational meetings or visiting other schools is permitted at full pay if such absence is approved by the Principal. If any certificated personnel wishes [sic] to be absent from duty for a brief period to attend a professional meeting, to visit schools, or otherwise pursue professional development, a written request for approval of such absence should be signed by the Principal and filed in the Superintendent's office a least two (2) days prior to the first day of anticipated absence. Professional leave is not to exceed two (2) days per year and is non-cumulative. The Principal may make exceptions on the number of days allowed when necessary.

3

Section 15.1 requires the parties to establish a salary schedule that will "[s]timulate professional growth while in service," and allows teachers to earn a higher salary if they receive certain amounts of academic credit in any field of study, both within and outside of education. Here, the parties do not dispute the underlying facts, and both contend the contract language is unambiguous. This case therefore hinges on an issue of law: the legal effect of the professional-leave terms in the Master Agreement. *See Taylor v. Just*, 138 Idaho 137, 140, 59 P.3d 308, 311 (2002) (stating that courts should apply the plain meaning of the terms if they are "clear and unambiguous").

Even though the plain text of the Master Agreement seems to impart unfettered discretion to the principal in authorizing professional leave, this Court implies a covenant of good faith and fair dealing into all contracts. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005); *Taylor v. Browning*, 129 Idaho 483, 490, 927 P.2d 873, 880 (1996). This doctrine applies to all employment relationships, including those between a public school teacher and a school district. *Smith v. Meridian Joint Sch. Dist.*, 128 Idaho 714, 721, 918 P.2d 583, 590 (1996); *Mitchell v. Zilog, Inc.*, 125 Idaho 709, 715, 874 P.2d 520, 526 (1994). "Any action by either party which violates, nullifies or significantly impairs any benefit of the employment contract is a violation of the implied-in-law covenant." *Metcalf v. Intermountain Gas Co.*, 116 Idaho 622, 627, 778 P.2d 744, 749 (1989). This is an "objective determination of whether the parties have acted in good faith in terms of enforcing the contractual provisions," an inquiry wholly independent of the employer's subjective intent. *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 243, 108 P.3d 380, 390 (2005) (citing *Metcalf*, 116 Idaho at 627, 778 P.2d at 749). However, such a covenant is only implied if it is compatible with the terms the parties agreed to. *Idaho Power Co. v. Cogeneration, Inc.*, 134 Idaho 738, 750, 9 P.3d 1204, 1216 (2000). The plain meaning of the Master Agreement requires a teacher seeking professional leave to first obtain the principal's written approval. Since there is no language to the contrary, the law places an implied duty of good faith and fairness on the principal and the School District when withholding permission to take professional leave.

As Appellants conceded during oral argument, there was no indication of bad faith on the School District's part. Section 10.5 of the Master Agreement states that teachers may take professional leave "to attend a professional meeting, to visit schools, or otherwise pursue professional development" only after obtaining the principal's approval. This provision nowhere

4

conveys an entitlement to take professional leave. Instead, it vests the School District with discretion in permitting teachers to take up to two days of leave and, so long as it does so in good faith, the authority to deny such leave. According to his contract with the School District, Richards is an "Elementary/Secondary Music Teacher," but he requested professional leave to defend a Master's Degree in Educational Administration. This program is not pedagogical but instead prepares students to be principals, superintendents, and other administrators. The principal and the School District could have in good faith interpreted the contract language as permitting leave only for activity within the teacher's particular academic area, rather than within the education field generally.[1]

Appellants nonetheless maintain that this Court must broadly interpret the term "professional development" to include Richards's pursuit of his degree because the salary provisions in § 15.1 of the Master Agreement reward teachers with pay increases for earning academic credits in any discipline, even those outside of education. The purpose of these provisions, according to the Master Agreement, is to "[s]timulate professional growth." Even if "professional development" and "professional growth" are intended to bear the same meaning, the salary provisions do not help clarify the professional-leave provision because they permit any credits in any field of study to advance a teacher's salary. It would seem that the School District would not have to provide paid leave to teachers pursuing degrees in fields wholly unrelated to teaching or education, such as engineering, law, or medicine. No terms anywhere in the contract require the school to provide professional leave to pursue academic credit in just any program. For these reasons, the district court correctly granted summary judgment in favor of the School District.

**B.     The School District Is Not Entitled to Attorney Fees on Appeal**

The School District incorrectly contends that it is entitled to attorney fees under I.C. § 12-117 because Appellants acted unreasonably in bringing this appeal. Section 12-117(1) provides:

> [I]n any administrative or civil judicial proceeding involving as adverse parties a
> state agency, a city, a county or other taxing district and a person, the court shall

---

[1] Richards had also apparently exceeded his two allotted annual professional-leave days by the time he requested time off in this case. The School District did not rely on this fact at any point during the grievance process and could therefore not raise it as a defense in litigation. Although the School District cannot now assert that Richards had "maxed out" his leave time, the fact that the School District had before granted professional leave to Richards is also relevant to whether it denied his request here in good faith. *See Shawver v. Huckleberry Estates*, 140 Idaho 354, 362, 93 P.3d 685, 693 (2004) ("The covenant requires that the parties perform, in good faith, the obligations imposed by their agreement . . . .").

award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

This provision applies to school districts, which are defined as "taxing districts" under Idaho law. I.C. § 63-3101; *Rogers v. Gooding Public Joint School Dist.*, 135 Idaho 480, 485, 20 P.3d 16, 21 (2001). Appellants had a reasonable basis in law to bring their appeal. The School District itself admits that the term "professional development" is somewhat vague. Appellants reasonably argued that Richards was engaging in professional development by seeking a degree in the field of education generally. The School District's request for attorney fees on appeal under § 12-117 is denied.

The School District also requests attorney fees under I.C. § 12-121, which permits fee awards to prevailing parties in "any civil action." This request is denied because I.C. § 12-117 is the exclusive means for awarding attorney fees for the entities to which it applies. *See Westway Const., Inc. v. Idaho Transp. Dep't*, 139 Idaho 107, 116, 73 P.3d 721, 730 (2003) (citing *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 718, 723, 947 P.2d 391, 396 (1997)) (stating that § 12-117 is the exclusive basis for seeking attorney fees against a state agency).

## VI. CONCLUSION

For the above reasons, the district court's ruling granting summary judgment to the School District is affirmed. The School District's request for attorney fees on appeal is denied.

Chief Justice EISMANN and Justice HORTON **CONCUR.**

J. JONES, J., concurring in part and dissenting in part.

While I concur with much of the Court's opinion, I dissent with regard to the determination that the School District denied Richards' leave request on proper grounds. The denial was based on an incorrect legal interpretation of the term "professional development." For that reason, I would reverse the district court's holding.

There are a number of conclusions in the Court's opinion with which I agree. The Court correctly states that the Master Agreement provides the school principal some discretion in approving or denying a request for professional leave. I agree that the principal must employ good faith in exercising that discretion. However, I do not believe that the principal can deny a request for professional leave based upon an incorrect legal interpretation of the contract. In my

view, "professional development" encompasses the purpose for which Richard sought professional leave. The principal denied his leave request solely on the ground that the purpose for which he sought leave did not qualify as professional development.

While both parties contended in their written briefing that the term "professional development" was unambiguous, we are not particularly required to assume that to be the case. Parties continually come before the Court arguing that a contract is unambiguous in their favor and this Court always reserves the option of making that determination on its own, as it is a question of law. When there are two different reasonable interpretations of a contract term, the contract is ambiguous. *Swanson v. Beco Constr. Co.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). During oral argument, the School District's counsel candidly admitted what is clear from the record—that the interpretation of "professional development" depends upon the standpoint from which it is viewed. The School District contends that it must be viewed from its standpoint and that professional development means development that serves the interests of the School District. The development must be confined to enhancing the knowledge and abilities of the particular teacher in his or her particular area. On the other hand, the appellants contend that it must be interpreted from the standpoint of the professional and that it means enhancement of the professional teacher's knowledge and abilities in the educational profession. Both are reasonable interpretations.

The record discloses facts upon which the ambiguity of the term can be resolved. The Master Agreement contains the professional leave provision. There is no separately-tailored provision contained in Richards' contract. During oral argument, the School District's counsel conceded that the provision, as used in the Master Agreement, encompasses a broad range of professional development activities. It is not confined to any particular teacher's specialized area. When Richards' contract was negotiated, no limiting language was inserted to indicate that professional development had any different meaning for him. He is entitled to the broad ranging definition contemplated in the Master Agreement.

Further, the Master Agreement utilizes the term "professional" in a number of regards. The profession involved in this case is the educational profession. Richards sought leave on the day in question to defend his final project for his master's degree in education, albeit in educational administration. However, the degree sought was in the educational profession. The Master Agreement does not deal with subspecialities, but rather, deals with the educational

profession. Similarly, with reference to professional teachers, the Idaho Code deals with teachers as being professionals involved in the education profession. *See* Chapter 12, Title 33, Idaho Code and, particularly, I.C. sections 33-1251, et. seq. (the Public Schools Professional Standards Act). The Code, like the Master Agreement, treats professional teachers as being members of the education profession rather than its various subspecialties.

Because the term is ambiguous, it is appropriate to consider how it was developed. The PEA, acting on behalf of Richards and the other teachers, proposed a broader leave provision for professional employees when the Master Agreement was being negotiated. The Board of the School District provided the critical language that was later agreed to between the parties. It was somewhat more limited than what the PEA had suggested but it provided, in pertinent part, "If any teacher wishes to be absent from duty for a brief period to . . . pursue professional development . . ." Where language is ambiguous, as this language is, the language "should be construed most strongly against the party . . . employing the words concerning which doubt arises." *J.R. Simplot Co. v. Bosen*, 144 Idaho 611, 616, 167 P.3d 748, 753 (2006). Under this principle of contract interpretation, the language is to be construed against the School District, the party that furnished the language.

Also, it is appropriate to consider who the provision is designed to benefit. During oral argument before the Court, appellants' attorney stated that the provision was primarily designed to benefit professional teachers, but he also contended that the provision benefitted the School District by increasing the amount of its allocation under the state distribution formula. The School District's counsel countered that the School District did not really benefit because the increased allocation essentially passed through to the teacher in question. Thus, it appears that the professional teacher, rather than the School District, is the beneficiary of the provision. Where the provision is designed to benefit the professional teacher by allowing the teacher to enhance his or her professional credentials, it is only reasonable to interpret the provision from the teacher's standpoint.

Thus, I would make the determination that the term "professional development" must be interpreted from the standpoint of the teacher, in this case Richards, and that the principal incorrectly determined that the purpose for which Richards sought leave was not a permissible one. While the principal could have utilized his discretion to deny the leave request on other grounds, such as the ground that Richards had already exceeded his two allotted annual

8

professional leave days by the time he requested leave in this instance, as alluded to in footnote 1 of the Court's opinion, the School District did not rely on this fact at any point during the grievance process and therefore could not raise it as a defense. Neither can the School District raise any other discretionary reason to support the denial, which was made on an incorrect legal interpretation of the contract provision.

I would hold that the principal improperly denied the leave request based on an incorrect legal interpretation of the contract and that the School District incorrectly affirmed his action, requiring reversal of the district court's decision. With regard to the question of attorney fees, I believe the Court correctly denied the School District's request for fees under I.C. section 12-117 and would similarly hold that provision to be inapplicable were the majority to have held as I suggest. There is a legitimate dispute as to the proper interpretation of the contract language and neither party has acted without a reasonable basis in fact or law.

Justice BURDICK **CONCURS.**