# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38561

BUKU PROPERTIES, LLC, an Idaho limited liability company,

    Plaintiff-Respondent,

v.

RAOEL H. CLARK and JANET C. CLARK, husband and wife; ANGUS JERRY PETERSON and BETTY JEAN PETERSON, husband and wife,

    Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Rexburg, November 2012 Term

2012 Opinion No. 152

Filed: December 21, 2012

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Jefferson County. The Honorable Dane H. Watkins, Jr., District Judge.

The judgment of the district court is affirmed.

Dunn Law Offices, PLLC, Rigby, for appellants. Robin D. Dunn argued.

Holden, Kidwell, Hahn & Crapo, PLLC, Idaho Falls, for respondent. DeAnne Casperson argued.

---

J. JONES, Justice.

This is an appeal from the district court's grant of summary judgment in favor of Buku Properties, LLC. Buku initiated this lawsuit to recover earnest money deposits from Raoel and Janet Clark and Jerry and Betty Peterson (collectively "Appellants"), after two codependent land sale contracts involving Buku and Appellants failed to close. We affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

In 2007, Buku entered into two separate but codependent[1] land sale contracts with the Clarks and the Petersons for the purchase of adjacent real properties. The Clark contract was executed on August 30, 2007 and provided that Buku would pay $1,044,075.18 for the Clarks'

---

[1] The Clark contract expressly conditions the sale on the Petersons also selling to Buku. Likewise, the Peterson contract expressly conditions the sale on the Clarks selling to Buku.

1

80.17 acres. The Clark contract required Buku to deposit $25,000 in earnest money, which was to "be refundable until closing." The Peterson contract was also executed on August 30, 2007, and provided that Buku would pay $980,000 for the Petersons' 73.0 acres. The Peterson contract required Buku to deposit $327,000 in earnest money, of which $317,000 was "fully refundable until closing." Closing for both properties was to be on or before December 21, 2007.

At the time the parties entered into the land sale contracts, the properties were zoned R-1, which allowed for a minimum density of one acre lots. However, after the contracts were executed, but prior to closing, the Jefferson County Planning and Zoning Commission began discussions to change the R-1 designation of the properties to R-5, which mandates a five acre minimum density. While conducting its due diligence, Buku discovered the County's plan to change the zoning designation of the properties. Aware of the potential re-zoning, Buku sent Appellants proposed addenda to the land sale contracts on December 18, 2007, seeking to extend the review period and closing date due to concerns about zoning and financing.

Attorney Robin Dunn, representing Appellants, responded to the proposed addenda in a letter dated December 19, 2007. The letter stated that Appellants "expect performance on this contract and desire to complete the sale pursuant to the terms of the agreement" and that if Buku did not close on December 21, Appellants would "declare the contract in default, keep the proceeds placed as earnest money and either sue for the balance or sue for specific performance." The closing date passed without any further action by either Buku or Appellants.

The bank financing Buku's purchase of the properties, The Bank of Commerce, also became aware of the potential re-zoning of the properties. On January 3, 2008, the Bank sent Buku a letter stating that Buku's loan was only "conditionally approved," and that, if the property were re-zoned R-5, the property value would be decreased. The bank stated that in order to fund the loan it "must receive verification from Jefferson County that this property will remain zoned R-1 Residential."

Buku sent Appellants' counsel a letter on June 17, 2008, demanding that all of the earnest money, except for the non-refundable $10,000 from the Peterson contract, be returned. When none of the earnest money was returned, Buku brought suit on November 6, 2008, alleging three causes of action: (1) return of earnest money under contract; (2) conversion; and, (3) unjust enrichment. Additionally, Buku requested prejudgment interest on the earnest money and attorney fees. Appellants filed a counterclaim with their answer, asserting seven claims: (1) specific

performance; (2) breach of contract; (3) unjust enrichment; (4) estoppel; (5) promissory estoppel/unjust enrichment; (6) Consumer Protection Act violations; and, (7) attorney fees.

In the latter part of 2009, the parties filed cross-motions for summary judgment. On January 27, 2010, the district court issued its Memorandum Decision, concluding that the sale contracts were unambiguous and enforceable but declining to grant summary judgment on the complaint or equitable counterclaims because of conflicting evidence as to the post-closing actions of the parties. The court did grant summary judgment against Appellants on their Idaho Consumer Protection Act claim.

Following the conduct of discovery by the parties, Buku again moved for summary judgment in November of 2010. The district court issued a Memorandum Decision on February 3, 2011 (Second Memorandum Decision), finding the sale contracts unambiguous and enforceable and determining that Buku was entitled to summary judgment. Concurrently, the court issued a judgment stating, "Buku's Motion for Summary Judgment is granted. Buku's Motion to Strike is denied." Appellants filed an appeal to this Court on February 17, 2011, but we issued an order suspending the appeal on the basis that it was premature since the district court had not yet issued a final judgment complying with the requirements of I.R.C.P. 54(a).

On February 22, 2008, Buku filed a cost memorandum, seeking $ 27,093.61 in attorney fees and $724.82 in costs, which the district court granted. On April 29, 2011, the district court entered its final judgment. Thereafter, Appellants timely filed an Amended Notice of Appeal.

## II.
## ISSUES ON REVIEW

I.      Is the Buyer's Obligations clause of the land sale contracts ambiguous?

II.     Did Buku breach the terms of the land sale contracts?

III.    Did the district court err by improperly considering parol evidence?

IV.     Did the district court improperly dismiss Appellants' counterclaims?

V.      Did the district court improperly rely on I.C. § 9-503?

VI.     Did the district court err by granting Buku attorney fees and costs?

VII.    Is either party entitled to attorney fees and costs on appeal?

# III.
# DISCUSSION

## A.    Standard of Review.

In reviewing a grant of summary judgment, this Court employs the same standard as the district court. *Cnty. of Boise v. Idaho Cntys. Risk Mgmt. Program, Underwriters*, 151 Idaho 901, 904, 265 P.3d 514, 517 (2011). Summary judgment is proper when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "Whether a contract is ambiguous is a question of law over which we exercise free review." *Swanson v. Beco Const. Co., Inc.*, 145 Idaho 59, 62, 175 P.3d 748, 751 (2007). "Whether a district court has correctly determined that a case is based on a commercial transaction for the purpose of I.C. § 12–120(3) is a question of law over which this Court exercises free review." *Garner v. Povey*, 151 Idaho 462, 469, 259 P.3d 608, 615 (2011).

## B.    The Buyer's Obligations clause of the land sale contracts is not ambiguous.

On appeal, Appellants argue that the "Buyer's Obligations" clause, present in both contracts, is ambiguous. The Buyer's Obligation clause provides:

> Prior to closing, it is Buyer's obligation to make sure that they are fully satisfied with the condition of the property, also any requirements, environmental requirements, and all the requirements that the Buyer needs to make for its due diligence purposes. Buyer will have four months to perform the due diligence inspections to satisfy Buyer's interests and concerns regarding the purchase.

In its Second Memorandum Decision the district court stated, "[n]either party asserts the Agreements are ambiguous." Therefore, the court concluded that the contracts were unambiguous and enforceable.

Appellants assert that the district court incorrectly found that neither party argued that the contract language was ambiguous. Rather, Appellants contend that they only stated a portion of the Buyer's Obligations clause was unambiguous, but that the phrase "and all of the requirements that the buyer needs…" was overly broad, ambiguous and capable of multiple meanings."[2] Appellants also argue that the contract language should be construed against Buku, as the drafter. In response, Buku argues that the district court correctly ruled that the contracts were both patently and latently

---

[2] In reality, however, Appellants' counsel never argued that the Buyer's Obligations clause was "ambiguous." In fact, the term "ambiguous" is not present at all in the Appellants' opposition briefing. Appellants only argued that the Buyer's Obligations clause was "non-artfully drafted" and "vague."

unambiguous.

"When interpreting a contract, this Court begins with the document's language." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 135 Idaho 763, 765, 25 P.3d 76, 78 (2001). Contract ambiguities can be either patent or latent. *Swanson*, 145 Idaho at 62, 175 P.3d at 751. No claim of latent ambiguity has been made by Appellants.

"To determine whether a contract is patently ambiguous, a court looks at the face of the document and gives the words or phrases used their established definitions in common use or settled legal meanings." *Id*. In determining patent ambiguity, the contract as a whole is considered. *Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 829, 70 P.3d 664, 667 (2003). A contract phrase is patently ambiguous when there are "two different reasonable interpretations or the language is nonsensical." *Potlatch*, 148 Idaho at 633, 226 P.3d at 1280.

The Buyer's Obligations clause at issue in this case is not patently ambiguous because the language is not subject to two reasonable interpretations, nor is it nonsensical. Appellants specifically take issue with the phrase "all of the requirements that the Buyer needs to make for its due diligence purposes." Despite Appellants' contentions, when read as a whole, the Buyer's Obligations clause expressly and unambiguously grants Buku the right to refuse to close, in the event that Buku is not "fully satisfied with the condition of the property." Although the wording of this provision is a bit awkward, it is what is sometimes referred by real estate law practitioners a "free look" provision, granting the buyer the ability to decline the purchase for virtually any reason, without losing the earnest money deposit (except for the non-refundable $10,000 under the Peterson contract). However, inartful wording does not make the provision ambiguous. The language is clear and not subject to multiple interpretations—thus, it is not patently ambiguous.

**C.** **Buku did not breach the terms of the land sale contracts by refusing to close.**

In its Second Memorandum Decision, the district court found that Buku did not breach the terms of the land sale contracts by failing to close on December 21, 2007. The district court stated that the language of the land sale contracts "clearly allowed Buku to ensure it was 'fully satisfied' with the condition of the Property and 'all the requirements' it needed to satisfy its 'interests and concerns.'"

5

On appeal, Appellants contend that Buku's failure to close on December 21, 2007 resulted in a breach of the contracts. Appellants assert that no reasonable explanation for Buku's failure to close existed because the contracts did not explicitly provide that potential zoning concerns permitted its refusal to close. Furthermore, Appellants argue that even if zoning concerns were an appropriate ground for refusing to close, no such grounds existed in this case because all parties knew the property was zoned R-1 at the time of contracting, and all parties knew the property was zoned R-1 at the time of closing.

Buku argues that the district court correctly found that it did not breach the contracts. Buku premises its argument on the fact that the unambiguous terms of the Buyer's Obligations clause allowed Buku to ensure that the condition of the property fully satisfied its interests and concerns. Buku argues that the uncertainty surrounding the re-zoning of the land, and the financial ramifications resulting therefrom, were legitimate and warranted Buku's decision not to close.

"A breach of contract is non-performance of any contractual duty of immediate performance." *Independence Lead Mines v. Hecla Mining Co.*, 143 Idaho 22, 28, 137 P.3d 409, 415 (2006). More specifically, a breach of contract consists of a "failure, without legal excuse, to perform any promise which forms the whole or part of a contract." *Id.*

Under both the Clark and the Peterson contracts, Buku had four months to "make sure that they [were] fully satisfied with the condition of the property." If Buku was not satisfied, the Buyer's Obligations clause allowed Buku to refuse to close and to have all $25,000 of its earnest money returned under the Clark contract and $317,000 of its earnest money returned under the Peterson contract. In this case, rather than simply asserting dissatisfaction with the property and refusing to close, Buku sent proposed addenda to Appellants, which provided:

> [W]ith the recent county zone change, both parties need additional time to review the contract. Because of the County Commissioner's recent proposed county-wide zone change, resulting in this property potentially being zoned R-5. The appraiser and the bank dealing with Buku … have legitimate concerns with financing. We agree to move our closing date back from December 21, 2007, to March 1, 2008. We will continue to talk and cooperate with each other.

Although the proposed addenda do not expressly assert dissatisfaction with the condition of the properties, it is clear from the language that Buku was exercising its right to decline the December 21 closing, while making an offer to extend the review period and closing date. The refusal to close was in compliance with the Buyer's Obligations clause because the clause gave Buku four months

6

to perform its due diligence and ensure that it was "fully satisfied with the condition of the property." Because the Buyer's Obligations clause gave Buku the discretionary right to refuse to close, it did not fail to perform a contractual duty.

### D. The district court did not improperly consider parol evidence.

The district court specifically found that the contracts allowed Buku to look into potential zoning changes that would affect its interests and concerns. Thus, the court concluded that the Buyer's Obligations clause, teamed with the potential of the property to be re-zoned, provided sufficient grounds for Buku to refuse to close without breaching the land sale contracts.

Appellants argue that because the district court found that the land sale contracts were unambiguous, it was improper for the court to consider any evidence outside the four corners of the contracts. Appellants point specifically to affidavit testimony related to potential re-zoning of the property as evidence considered by the court, but outside the four corners of the land sale contracts. Buku asserts that Appellants fundamentally misunderstand the law regarding the use of extrinsic evidence in contract interpretation. Buku argues that the district court did not accept any extrinsic evidence to interpret the contract terms. We agree with Buku.

"When a written instrument is complete on its face and is unambiguous, extrinsic evidence of prior or contemporaneous representations or negotiations are inadmissible to contradict, vary, alter, add to, or detract from the instrument's terms." *Kepler-Fleenor v. Fremont Cnty.*, 152 Idaho 207, 211, 268 P.3d 1159, 1163 (2012). Only when a document is ambiguous is parol evidence admissible to discover the drafter's intent. *Id*.

In this case, the district court did not improperly consider parol evidence because the court did not consider any extrinsic evidence to contradict, vary, alter, add to, or detract from the terms of the land sale contracts. The court was merely observing that Buku had declined to proceed with the closing because of its concerns about the zoning status of the property. This was merely a gratuitous observation, which has no bearing on the interpretation of the contract. Buku was not obligated to furnish any reason for declining to proceed with the purchase. Under the contract language, it was only necessary that it provide notice that it was not going to close the transaction on December 21. It did so by providing Appellants with the addenda on December 18. Appellants' parol evidence argument is without merit.

7

**E.      The district court properly dismissed Appellants' counterclaims.**

The district court determined that Buku was entitled to summary judgment on Appellants' equitable counterclaims. In its Second Memorandum Decision the court stated, "[b]ecause this Court has found the Agreements enforceable, Clarks and Petersons cannot rely on their equitable claims." In dismissing Appellants' claims, the district court relied on case law that precludes equitable claims where an enforceable contract exists.

In their brief to this Court, Appellants argue that their equitable claims (specific performance, unjust enrichment, estoppel and detrimental reliance) were improperly dismissed because they had no adequate legal remedy after the district court found the land sale contracts unenforceable. Buku counters that the district court's dismissal of the Appellants' equitable claims was proper. Buku reiterates the district court's analysis and asserts that the existence of the valid and enforceable contracts precluded Appellants' equitable counterclaims.

Generally, "[e]quitable claims will not be considered when an adequate legal remedy is available." *Iron Eagle Dev., LLC v. Quality Design Sys., Inc.*, 138 Idaho 487, 492, 65 P.3d 509, 514 (2003). Thus, when "parties enter into an express contract, a claim based in equity is not allowed because the express contract precludes enforcement of equitable claims." *Id*. However, in some instances "[a]n award for unjust enrichment may be proper even though an agreement exists." *Bates v. Seldin*, 146 Idaho 772, 776, 203 P.3d 702, 706 (2009). This occurs when the express agreement is found to be unenforceable. *Id*. at 776–77, 203 P.3d at 706–07.

In this case, the district court expressly found that the land sale contracts were enforceable. Any argument to the contrary is without merit. Furthermore, no argument was ever raised by the Appellants in opposition to Buku's second summary judgment motion that the contracts were unenforceable, and no cogent argument has been presented to this Court that the contracts are unenforceable. Just because the contracts were enforceable to the detriment of Appellants, does not mean that they were not enforceable.

Based on the record, it appears that the district court's dismissal of the Appellants' equitable counterclaims was proper. It was proper because the parties executed valid and enforceable contracts that provided a basis for adequate legal claims to be raised by Buku, the Clarks, and the Petersons. Because the land sale contracts at issue in this case are valid, enforceable, and provide for an adequate legal remedy, the district court did not err in dismissing the Appellants' equitable counterclaims.

8

**F.      The district court's citation to I.C. § 9-503 was irrelevant.**

The contracts at issue in this case contain a provision entitled "Amendments and Waivers," which provides, "[n]o amendment of any provisions of this agreement will be valid unless the same shall be in writing and signed by the parties." In support of its second motion for summary judgment, Buku argued that the Amendments and Waivers clause rendered all of the Appellants' testimony regarding alleged post-closing communications between the parties irrelevant. The district court agreed that the terms of the contracts precluded the introduction of post-closing oral communications. Additionally, the court cited to I.C. § 9-503[3] for the proposition that, even if there were no Amendments and Waivers provision, any oral agreements made by Buku post-closing would be inadmissible.

Appellants' briefing, asserting that the district court's citation to I.C. § 9-503 was in error, consists of long inapplicable block quotes accompanied by sparse cogent analysis. At no point do Appellants indicate the grounds for their assertion that the district court improperly relied on I.C. § 9-503. Rather, Appellants merely state that the doctrine of part performance, as it relates to the statute of frauds, creates equitable remedies.

Buku asserts that Appellants' part performance argument is "nonsensical." Buku argues that where a written and enforceable contract is in place, the doctrine of part performance, and the statute of frauds in general, have no applicability. We agree.

In this case, the statute of frauds does not come into play. The contracts are integrated, they have not been extended, modified, or renewed by any writing conforming with the Amendments and Waivers provision, and any argument to the contrary is without merit. The district court's citation to I.C. § 9-503 was not improper, merely irrelevant.

**G.      The district court's award of attorney fees and costs was proper.**

In its Order Re: Motion for Attorney's Fees and Costs, the district court granted Buku $27,093.61 in attorney fees and $724.82 in costs. Buku's cost memorandum claimed that it was entitled to fees on the basis of language within the contracts themselves, I.C. §§ 12-120(3), and I.C. § 12-121. However, the district court relied solely on I.C. § 12-120(3) in awarding Buku attorney

---

[3] I.C. § 9-503 provides:

> No estate or interest in real property, other than for leases for a term not exceeding one (1) year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

fees. The district court also awarded costs in the amount of $724.82.

Appellants argue that the district court's award of attorney fees and costs to Buku was improper because Buku's motion seeking costs and fees was untimely and the contracts with Buku were "rescinded," resulting in no contract and no commercial transaction upon which to base an award.

Buku argues that its motion seeking fees and costs was timely because it was submitted to the court before the entry of a valid final judgment. Additionally, Buku maintains that Appellants' belief that Buku sought and was granted rescission of the contracts is nonsensical. Buku argues that it never sought rescission and that the district court at no time ruled that the contracts were rescinded. Buku is correct on this point–the contracts were not "rescinded." The transactions did not close because Buku properly exercised its right to decline to proceed under the Buyer's Obligations clause.

### 1. Buku's request for costs was timely.

The district court initially granted judgment to Buku on February 3, 2011. On February 22, 2011 Buku filed its Memorandum of Attorneys Fees and Costs, alleging that it was entitled to fees and costs. Just prior, on February 17, 2011, Appellants filed a Notice of Appeal. The appeal was suspended because the district court had yet to enter a final judgment complying with the requirements of I.R.C.P. 54(a). Responding to this Court's Order Suspending Appeal, the district court entered its Final Judgment on April 29, 2011.

Appellants premise their untimeliness argument on I.R.C.P. 54(d)(5), which provides:

> At any time after … a decision of the court, any party who claims costs may file and serve on adverse parties a memorandum of costs, itemizing each claimed expense, but such memorandum of costs may not be filed later than fourteen (14) days after entry of judgment …. A memorandum of costs prematurely filed shall be considered as timely.

Buku's requests for costs was timely and complied with I.R.C.P 54(d)(5).[4] Rule 54(d)(5) expressly provides that "[a] memorandum of costs prematurely filed shall be considered as timely," and that is precisely what Buku did in this case. Buku's Memorandum of Attorneys Fees and Costs was filed on February 22, 2011, sixty-six days premature of the district court's entry of a

---

[4] Had the February 3, 2011, judgment been a final judgment, complying with I.R.C.P. 54(a), the cost memorandum would likely have been barred as untimely. However, that judgment was noncompliant with Rule 54(a). The subsequent judgment entered on April 29, 2011, complied with Rule 54(a) and was therefore the final judgment. Thus, the cost bill would have been due within fourteen days of April 29, 2011.

final judgment on April 29, 2011. Thus, it was timely.

### 2. The district court's grant of attorney fees under I.C. § 12-120(3) was proper.

Idaho Code § 12-120(3) allows for an award of attorney fees to a prevailing party in a civil action to recover on any commercial transaction. *Garner*, 151 Idaho at 469, 259 P.3d at 615. "A commercial transaction includes all transactions except those for personal or household purposes." *Id*. For a commercial transaction to be present for the purposes for I.C. § 12-120(3) "each party to the transaction must enter the transaction for a commercial purpose." *Carrillo v. Boise Tire Co., Inc.*, 152 Idaho 741, 756, 274 P.3d 1256, 1271 (2012).

This Court has employed a two-step analysis to determine whether fees under I.C. § 12-120(3) are warranted. *Garner*, 151 Idaho at 469, 259 P.3d at 615. "[First], there must be a commercial transaction that is integral to the claim; and [second], the commercial transaction must be the basis upon which recovery is sought." *Id*. Thus, the commercial transaction must constitute the gravamen of the lawsuit and form the basis upon which the complaining party seeks recovery. *Id*. Whether the district court properly awarded attorney fees under I.C. § 12-120(3) is a question of law over which this Court exercises free review. *Id*.

Here, under this Court's two-part framework for granting fees under I.C. § 12-120(3), the district court's award of attorney fees was proper. First, was there a commercial transaction that was integral to Buku's claim? Part one of the framework has two subparts: one, was there a commercial transaction, and two, if so, was the commercial transaction integral to Buku's claim? The contracts between Buku and Appellants were commercial transactions because neither party entered into the transaction for personal or household purposes. Buku explicitly sought the land for commercial development. Similarly, the sale of the land by the Clarks and Petersons was not performed for a personal or household purpose, considering the large acreage sold and the fact that both parcels of land were historically used for commercial farming purposes. Furthermore, the commercial transaction between Buku and Appellants was integral to Buku's claim because it was the sole basis upon which recovery was sought by Buku in its Complaint.

Second, the commercial transaction was the actual basis for Buku's suit and constituted the gravamen of Buku's claims. Buku sought to have its earnest money returned based on the contract terms. Thus, the transactions at issue in this case were commercial transactions and they satisfied this Court's two-part test to invoke I.C. § 12-120(3), making the district court's award of attorney fees proper.

11

**H.      Buku is entitled to attorney fees on appeal.**

Both parties request fees on appeal. Appellants assert that they are entitled to fees under the attorney fees provision of the land sale contracts, I.C. § 12-120, and I.C. § 12-121. Buku relies on the attorney fees provision of the contracts and I.C. §12-120(3) in arguing that it is entitled to fees on appeal.

Buku is entitled to fees on appeal under the terms of the contracts. Paragraph twenty-three of the land sale contracts provides that "[t]he prevailing party in any action to enforce the agreement shall be entitled to recover its reasonable attorneys fees and costs." Because the district court's grant of summary judgment is affirmed, Buku is the prevailing party in this appeal. Furthermore, this action was initiated to enforce the agreement between the parties, i.e. to recover the refundable earnest money deposits made by Buku pursuant to the contracts. Thus, Buku is entitled to its fees and costs on appeal.

## IV.
## CONCLUSION

The district court's judgment is affirmed. Additionally, Buku is awarded its attorney fees and costs on appeal.


Chief Justice BURDICK, and Justices EISMANN, W. JONES, and HORTON CONCUR.