# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 48922

| | | |
|---|---|---|
| GREENBRIAR ESTATES HOMEOWNERS' ASSOCIATION, INC., an Idaho nonprofit corporation, | ) ) ) | |
| | ) | |
|    Plaintiff-Counterdefendant-<br>   Respondent-Cross Appellant, | ) ) | |
| | ) | |
| v. | ) | Boise, November 2022 Term |
| | ) | |
| JOHN ESPOSITO, an individual, | ) | Opinion Filed: March 22, 2023 |
| | ) | |
|    Defendant-Counterclaimant-<br>   Appellant-Cross Respondent, | ) ) | Melanie Gagnepain, Clerk |
| | ) | |
| and | ) | |
| | ) | |
| D.L. EVANS BANK, an Idaho corporation, | ) | |
| | ) | |
|    Defendant. | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Davis F. VanderVelde, District Judge.

The decision of the district court is affirmed.

Strother Law Office, Boise, for appellant/cross respondent, John Esposito. Jeffrey A. Strother argued.

Borton-Lakey Law & Policy, Meridian, for respondent/cross appellant, Greenbriar Estates Homeowners' Association, Inc. Victor S. Villegas argued.

---

STEGNER, Justice.

This appeal concerns the existence of an easement across a lot ("Lot 20") in the Greenbriar Estates subdivision. In 2004, John Esposito acquired two adjacent parcels of land in Canyon County, Idaho. The eastern parcel was eventually developed into the Greenbriar Estates subdivision. The western parcel was severed and divided into two smaller parcels: a northern parcel and a southern parcel. The northern parcel contained a mini storage unit for use by the residents of the Greenbriar Estates (the "Mini Storage Lot"), while Esposito planned to develop

1

the southern parcel into a recreational vehicle storage lot[1] (the "RV Lot") and to additionally build several more homes. The only access to the planned RV Lot at the time of severance was through the northern parcel. However, no access easement either existed or was created at the time that the northern and southern parcels were severed from the Greenbriar subdivision. As an alternative to accessing the RV Lot from the adjoining northern parcel, Esposito planned to access the RV Lot through the Greenbriar subdivision via Lot 20, which was part of the Greenbriar subdivision. Though it was not a dedicated street or road, Esposito paved Lot 20 and added utilities so that Lot 20 could be used to access the RV Lot. At the time of its severance, the use of Lot 20 was not governed by any written instrument.

Esposito initially managed the common areas within the Greenbriar Estates subdivision. However, once he completed the development of the subdivision, he quitclaimed the common areas within the subdivision, including Lot 20, to the Greenbriar Estates Homeowners' Association (the "HOA"). The HOA subsequently contested Esposito's use of Lot 20 to access the RV Lot. After Esposito and the HOA began litigating this dispute, the parties entered into two partial settlement agreements: the first in 2012 and the second in 2014. In 2013, during the ongoing litigation, Esposito defaulted on his payments for the RV Lot and D.L. Evans Bank (the "Bank"), the mortgage holder, foreclosed. In 2014, Esposito, who no longer owned the RV Lot, settled all existing claims with the HOA in the 2014 total settlement agreement; however, the 2014 agreement did not refer to the RV Lot.

Several years later after executing the 2014 settlement agreement, Esposito reacquired the RV Lot from the Bank and resumed his efforts to transform the parcel into RV storage and additional homesites. Once Esposito began developing the RV Lot and using Lot 20 to access it, the HOA again filed suit in district court, alleging Esposito had no right to use Lot 20. In its complaint, the HOA sought to quiet title to Lot 20 against the Bank and its successors in interest, which included Esposito. A bench trial was held to resolve the dispute. Following the trial, the district court granted the HOA's request to quiet title to Lot 20 but denied the HOA's request for attorney fees. Esposito and the HOA both appealed the district court's decisions. For the reasons discussed below, we affirm the decision of the district court.

---

[1] Esposito refers to the RV Lot as "Greenbriar 3." However, for consistency and simplicity, we will refer to the parcel as the "RV Lot."

# I. FACTUAL AND PROCEDURAL BACKGROUND

John Esposito is a home builder and land developer who owns and operates Asbury Park, LLC. In 2004, Esposito acquired two parcels of land in Canyon County that shared an east/west border. The Greenbriar Estates subdivision now sits on the eastern parcel (the "Greenbriar Parcel"). The western parcel was split in two, with the northern portion set aside for a small storage unit for Greenbriar residents that became the Mini Storage Lot, and the southern portion reserved for the RV Lot and space to expand the existing subdivision with multiple building lots, collectively referred to as the RV Lot. Despite the shared borders between the western parcels and the Greenbriar Parcel, there was no access from the Greenbriar Parcel to the western parcels when Esposito acquired the lots in 2004. The only access to the western parcels was from Stanford Street on the northeast portion of the western parcel, and when Esposito severed the western parcel from the eastern parcel, he did not create an easement from the Greenbriar Parcel to the RV Lot. In 2004, Esposito's plan was to use a portion of the Greenbriar Parcel—specifically Lot 20—to access the RV lot. This plan was never implemented or recorded. Esposito did not dedicate Lot 20 as a street or road for the subdivision because it was only twenty feet wide, and the minimum width for streets or roads was thirty feet.

Esposito completed the Greenbriar subdivision in July 2007, at which time Esposito's business, Asbury Park, LLC, began selling the lots to individual homeowners. Shortly thereafter, Esposito and his wife transferred control of the subdivision to the HOA, including certain common areas. After the new members of the HOA were appointed, Esposito quitclaimed Lot 20 and the other common areas to the HOA. He also "signed an Easement Agreement which purported to grant an easement over Lot 20, Blk 1[2] to the RV lot." Esposito putatively handled these matters under his claimed authority as president of Asbury Park, LLC and president of the Greenbriar HOA. This purported easement was later determined to be invalid because, at the time Esposito signed and recorded the Easement Agreement, he lacked actual authority to do so. Prior to Esposito signing the Easement Agreement, he signed a quit claim deed relinquishing ownership of Lot 20 and other portions of the Greenbriar Estates Subdivision that he held as president of the developer, Asbury Park, LLC, to the newly formed HOA.

---

[2] We refer to "Lot 20, Block 1" as "Lot 20" for brevity throughout this opinion. There is no substantive difference between the two.

3

Prior to this appeal, Esposito and the HOA began litigating the dispute but settled some of the issues in a 2012 Partial Settlement Agreement (the "2012 PSA"). One portion of this settlement agreement permitted the RV Lot to be developed into five additional single-family lots with permission for both Esposito and the subsequent owners "to use [] the roads within the Subdivision for ingress and egress to those lots." However, the provision was made contingent on a two-thirds affirmative vote of the Class A members of the Greenbriar HOA. As it turns out, the HOA never voted to approve this change, a new plat was never recorded, and the RV Lot remained undeveloped.

In 2013, during the pendency of the earlier litigation, Esposito defaulted on his loans involving the RV Lot and the Mini Storage Lot, and the Bank took ownership by foreclosing on the properties. The litigation between Esposito and the HOA continued. Esposito and the HOA ultimately signed a second settlement agreement (the "2014 Settlement Agreement").[3] Under the 2014 Settlement Agreement, the HOA paid Esposito $150,000, and all remaining claims were settled, though this latter agreement never addressed access to the RV Lot from the Greenbriar Subdivision.

After the Bank took title to the RV Lot, some members of the HOA began renting space from the Bank on the lot to store their RVs. Members also used Lot 20 to access the parcel. In 2017, the HOA changed the original 2005 covenants, conditions, and restrictions ("CC&Rs") providing that, although the Bank owned the RV Lot, it "would only be used by members of the subdivision for RV Storage." About one year later, both Esposito and the HOA began working with the Bank in an attempt to purchase the RV Lot. Unable to obtain financing from the Bank, Esposito turned to a private investor and entered into a contract for the purchase of both the RV Lot and the Mini Storage Lot from the Bank. For payment of $100,000, the private investor purchased and retained the Mini Storage Lot, and for payment of $1, the private investor purchased the RV Lot; however, ownership of the RV Lot was later transferred by the financier to Esposito.[4] At the time of purchase, the parties did not record a new easement that would grant access from Stanford Street to the RV Lot through the Mini Storage Lot. The private investor later sold the Mini Storage Lot, and Esposito again attempted to develop the RV Lot into RV storage and

---

[3] The parties refer to this 2014 Settlement Agreement as a "2014 Partial Settlement Agreement;" however, because the 2014 Settlement Agreement "terminat[ed] and dismiss[ed] such litigation in its entirety and mutually release[ed] the Parties from the claims set forth therein[,]" the use of the word "partial" is inaccurate.

[4] The actual details concerning the transaction between Esposito and the private investor are unclear from this record.

4

additional residential lots that would be accessed via Lot 20. The HOA objected to Esposito's plan to use Lot 20 in the way described and sued the Bank and Esposito (and unrelated, potential successors in interest, who are not involved in this litigation) to quiet title to Lot 20.

The HOA included four claims in its initial complaint against Esposito, the Bank, and potential successors in interest to the RV Lot.[5] First, the HOA

> sought a declaratory judgment that (1) as of July 10, 2007, John & Lexi Esposito were neither HOA officers nor on the board of directors; and therefore (2) that John Esposito could not bind the HOA to any contracts or agreements, including the Access Easement Agreement as of July 10, 2007, because he lacked the authority to do so; and (3) that the Access Easement Agreement was void and therefore did not grant an easement through lot 20, Block 1 of Greenbriar Estates subdivision.

Second, the HOA argued that Esposito should be estopped from arguing that he was still involved with the HOA in 2007 because in the prior lawsuit Esposito conceded that, in 2007, he had transferred ownership of the subdivision common areas to the residents of the subdivision via quitclaim deed, as well as management of the HOA to the new residents.

Third, the HOA attempted to quiet title to Lot 20 and argued that no valid easement existed. The HOA sought an additional declaration that no one could claim that a prescriptive easement existed since the original "Access Easement Agreement" signed by Esposito in 2007 was void and the twenty-year prescriptive easement timeframe was not satisfied.

On its fourth and final claim, the HOA requested a declaration from the district court that if an easement did exist, then it must not be used as an access to the residences because it would result in "a substantial change or increase of the burden on the servient tenement from the prior use as an RV lot."

Esposito asserted several affirmative defenses in response to the HOA's suit and brought two counterclaims: First, he argued:

> In filing the herein Complaint, counterdefendant Greenbriar Estates Homeowners' Association, Inc. ("Greenbriar") breached the 2012 Partial Settlement Agreement under which agreement counterclaimant Esposito was authorized to construct five residential units on five lots on property adjacent to the subdivision and "[Counterclaimant] and subsequent owners of the lots shall have the right to use the roads"". [sic] As a proximate consequence of that breach, i.e., plaintiff's filing the Complaint, counterclaimant was unable to obtain the conventional financing to exercise his option with defendant Bank. Rather, he undertook a hard money loan

---

[5] The potential successors were never involved in the litigation.

which required that he assign his right to purchase the Community Storage Facility (self storage) to another buyer, all to his financial detriment.

Second, Esposito claimed:

Based upon the conduct set forth above, i.e., "su[mm]oning the [counterclaimant] into court to defend against a groundless complaint" ([*Berkshire*] *Investments v. Taylor,* 153 Idaho 73, [84], 278 P. 3d []943, 954 (2012)), and the consequent elimination of counterclaimant's ability to obtain conventional financing, counterdefendant's conduct constituted an abuse of process.

. . .

As a proximate result of counterdefendant's abuse of process, counterclaimant Esposito was unable to purchase the Community Storage Facility, all to his financial damages in excess of the jurisdictional limits of this Court.

The parties filed cross motions for summary judgment. The district court denied Esposito's motion for summary judgment regarding his counterclaims, and the district court partially granted the HOA's motion for summary judgment. The district court granted summary judgment to the HOA on its claim for declaratory judgment, concluding that Esposito was not an officer or director for the HOA in 2007 and, as a result, could not bind the HOA to any contracts, including the Access Easement Agreement, which Esposito argued had granted him an easement across Lot 20. Next, the district court addressed the HOA's request to quiet title to Lot 20 and obtain a declaration that no prescriptive easement across Lot 20 existed. On this claim, the district court granted partial summary judgment to the HOA except as to the issue of whether the 2012 Partial Settlement Agreement created an easement across Lot 20. Finally, the district court refused to address the HOA's request that, if an easement existed, then it must not be used to access the residences. Reasoning that a decision on this claim would require a premature ruling on whether an easement existed, the district court denied summary judgment.

Next, the district court held a bench trial, after which it made the following findings. In reviewing the HOA's claim to quiet title to Lot 20, the district court's sole question was whether the 2012 PSA "implicitly created an easement [to Lot 20] through its terms and conditions." The district court found that "the parties intended the five residential lots to have access across Lot 20" because the text of the 2012 PSA would be unclear without assuming that there would be access to the lots. Though the district court concluded that it was likely that "the implied contractual terms created an easement," it first had to determine whether the language of that portion of the 2012 PSA had become operative.

6

The district court found that "[a]ccess to Lot 20[,] Block 1 under the 2012 PSA was dependent upon the incorporation of the RV Lot into Greenbriar subdivision, which, in turn, was dependent upon approval of the voting members of the then existing HOA." The parties agreed that the HOA had never held a meeting on that matter, a new plat had never been recorded, and development of the RV Lot had ceased. Therefore, the district court concluded that even though the 2012 PSA appeared to imply an easement for ingress and egress over Lot 20, the easement never became operational due to lack of action by the HOA. In addition, the district court found that Esposito waived arguments regarding the sufficiency of the 2012 PSA when he signed the 2014 Settlement Agreement, putting to rest any remaining disputed claims from the first round of litigation. As a result of its analysis, the district court quieted title to Lot 20 in favor of the HOA. In its decision, the district court noted that this result would landlock the RV Lot (as both Esposito and the Bank were aware when they transferred ownership for $1); however, without more, that fact alone was not enough to imply the existence of an easement.

The district court next turned to Esposito's counterclaim for breach of contract. Esposito argued that when the HOA filed the complaint in the present case, it breached the 2012 PSA because it failed to recognize an easement and continued to pursue additional claims against Esposito. The district court referenced its prior determination that the HOA never incorporated the RV Lot into the subdivision. In rejecting Esposito's claimed breach of contract, the district court concluded there was no contract to be breached because the easement never came to fruition. The district court further explained that even if that portion of the 2012 PSA were operational, a proceeding to quiet title is not, in and of itself, a breach. It is simply a request to "determine the legal status of the parties as it relates to the RV Lot."

Second, the district court explained that a finding for Esposito on his claim of abuse of process would require "(1) a willful act in the use of legal process not proper in the regular course of the proceeding that was (2) committed for an ulterior, improper purpose." The district court determined that to satisfy the first element, the HOA would have had to file a frivolous or otherwise groundless action, which it had not done. Therefore, the district court found that Esposito had failed to carry his burden of proof on this issue.

Esposito filed a motion for reconsideration, which the district court denied. Esposito then appealed the district court's original decision and the denial of the motion for reconsideration to this Court. He has not appealed the dismissal of his counterclaims. In the case below, the HOA, as

7

the prevailing party, requested costs and attorney fees. The district court awarded the HOA costs as a matter of right but denied the HOA's requests for discretionary costs and attorney fees. The HOA filed a motion for reconsideration of the attorney fees decision, which the district court denied. The HOA then filed a notice of appeal challenging the district court's denial of its claim for attorney fees.

## II. STANDARD OF REVIEW

> Following a bench trial, this Court will not set aside a trial court's findings of fact unless they are clearly erroneous. *Turcott v. Estate of Bates*, 165 Idaho 183, 188, 443 P.3d 197, 202 (2019); I.R.C.P. 52(a)(7). "In determining whether a finding is clearly erroneous this Court does not weigh the evidence as the district court did," but instead "inquires whether the findings of fact are supported by substantial and competent evidence." *Id*. "Evidence is regarded as substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact had been proven." *Id.* "Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "However, this Court exercises free review over the district judge's conclusions of law." *Turcott*, 165 Idaho at 188, 443 P.3d at 202.
>
> . . .
>
> "[W]hen an award of attorney fees depends on the interpretation of a statute, the standard of review for statutory interpretation applies." *Med. Recovery Servs., LLC v. Lopez*, 163 Idaho 281, 283, 411 P.3d 1182, 1183–84 (2018). "The interpretation of a statute is a question of law over which this Court exercises free review." *Id.*

*Kenworth Sales Co. v. Skinner Trucking, Inc.*, 165 Idaho 938, 942–43, 454 P.3d 580, 584–85 (2019).

## III. ANALYSIS

### A. The district court did not err in concluding that the 2012 PSA required the HOA to vote to annex the RV Lot in order to effectuate the 2012 PSA's language regarding the easement across Lot 20.

The district court began its decision with a discussion of whether the 2012 PSA created an implied easement across Lot 20 of the subdivision to access the RV Lot. The district court concluded that the language of the 2012 PSA was ambiguous, but the relevant testimony at trial demonstrated that the parties contemplated an easement for the use of Lot 20 to access the RV Lot, and that this interpretation was "reasonable and necessary to effectuate the overall terms of the 2012 PSA[.]" However, the district court continued and found that the existence of this implied easement was dependent upon the HOA's annexation of the RV Lot. Because the HOA never

8

voted to approve the annexation, the RV Lot was never incorporated into the subdivision. As a result, the easement which was envisioned as a means to provide access to the RV Lot never came into existence.

Esposito argues that the district court erred when it concluded that an easement could only be created by a vote of the HOA. Under Esposito's interpretation of the 2012 PSA, the annexation requirement for the RV Lot is superfluous and runs contrary to general standards of contract interpretation. Instead, he argues that section 4 of the 2012 PSA does not require an affirmative vote to annex the RV Lot. A portion of that provision reads as follows:

> Plaintiffs and Defendants agree that the Residential Lots of Greenbriar Estates Subdivision No. 3 [the RV lot] as shown on the Plat attached hereto as <u>Exhibit D</u> minus the RV parking area, shall be part of Greenbriar Estates Subdivision and the Greenbriar HOA and subject to all the terms, conditions, rights, and obligations set forth in the Declaration and in the First Supplement[.]

Therefore, Esposito argues, it was understood that an easement already existed by virtue of the RV Lot becoming a part of the subdivision. Esposito argues that the 2012 PSA is unambiguous in this respect, and, therefore, the district court erred in its interpretation of the agreement.

The HOA characterizes Esposito's arguments as a request for this Court to reweigh the evidence. It argues that Esposito's understanding of the 2012 PSA is incorrect because the HOA never actually voted to incorporate the RV Lot into the Greenbriar Estates Subdivision. Therefore, though the 2012 PSA may have contemplated the creation of an easement for new residences in an updated plat that included the RV Lot, this portion of the 2012 PSA terminated when the HOA failed to vote on the incorporation.

The district court relied on *Davis v. Professional Business Services, Inc.*, 109 Idaho 810, 813–14, 712 P.2d 511, 514–15 (1985) and *Medical Recovery Services, LLC v. Olsen*, 160 Idaho 836, 839–40, 379 P.3d 1106, 1109–10 (2016) for its determination that contracts include not only their express provisions, but also those implied provisions that are necessary to effectuate the contract. However, prior to reviewing the district court's analysis regarding implied contractual provisions, it is necessary for us to first determine whether the 2012 PSA is ambiguous. "Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact." *Potlatch Educ. Ass'n v. Potlatch School Dist. No. 285*, 148 Idaho 630, 633, 226 P.3d 1277, 1280 (2010) (internal citations omitted). This Court recently explained:

> There are two types of ambiguity, patent and latent. A patent ambiguity exists when the document is ambiguous on its face. A latent

9

ambiguity exists where an instrument is clear on its face, but loses that clarity when applied to the facts as they exist. This includes an ambiguity that does not appear upon the face of the [agreement], but lies hidden in the subject to which it has reference.

This Court has described the process in explaining latent ambiguity as being divided into two parts: First, the introduction of extrinsic evidence to show that the latent ambiguity actually existed; and, second, the introduction of extrinsic evidence to explain what was intended by the ambiguous statement.

*Porcello v. Estate of Porcello*, 167 Idaho 412, 423, 470 P.3d 1221, 1232 (2020) (internal quotation marks and citations omitted). "Where the facts in existence reveal a latent ambiguity in a contract, the court seeks to determine what the intent of the parties was at the time they entered into a contract." *East Side Highway Dist. v. Delavan*, 167 Idaho 325, 342–43, 470 P.3d 1134, 1151–52 (2019) (internal citations and quotation marks omitted).

Here, the district court correctly identified a latent ambiguity in the 2012 PSA and heard evidence to determine the intentions of the original parties. At the summary judgment stage, both parties offered different, reasonable interpretations of the 2012 PSA and the actions contemplated by the PSA. As a result, the district court determined that the document was ambiguous, and a trial was necessary to identify its true meaning. Then, at the trial, both parties presented extensive evidence on whether the 2012 PSA's potential creation of the easement had expired under the applicable statute of limitations or whether the HOA had waived its right to vote to incorporate the RV Lot into the subdivision. The district court then analyzed the evidence to determine the parties' intent regarding the 2012 PSA. Specifically, the question it grappled with was whether the parties intended the future residences to be built on the RV Lot would have an easement through Lot 20 without the need for an affirmative vote of the HOA.

When an ambiguity has been identified, the next step is to determine whether the district court's factual determination resolving the ambiguity is supported by substantial and competent evidence. *Potlatch Educ. Ass'n*, 148 Idaho at 633, 226 P.3d at 1280. Here, the district court's findings are supported by substantial and competent evidence. The HOA's former attorney testified that an easement was not contemplated because it would not be necessary if the RV Lot had been annexed into the subdivision. The district court apparently relied on this testimony and the terms of the 2012 PSA (which it quoted at length in its opinion) in finding that an implied easement would have been created if the HOA had voted to incorporate the RV Lot into the subdivision as residential lots.

10

Esposito's argument that the district court failed to give meaning to the entire 2012 PSA is unpersuasive. Esposito argues that the HOA should not have had to vote on the annexation of the RV Lot for the easement language in the 2012 PSA to be effective. However, as discussed above, interpreting an ambiguous contract is a question of fact. The district court reserved this issue for trial, so it could hear conflicting testimony on the matter. Its ultimate decision that the HOA was required to vote on incorporating the RV Lot into the subdivision in order to effectuate the easement is supported by substantial and competent evidence.

The language of the 2012 PSA supports the district court's interpretation:

> Plaintiffs and Defendants agree that Greenbriar Estates Subdivision No. 2 consisting of Lots 100 through 117, shall be admitted into the Greenbriar Estates Homeowners' Association . . . Plaintiffs and Defendants agree that the First Supplement is in acceptable form and content to perform the steps of bringing Lots 100 through 117 into the Greenbriar HOA; *however, pursuant to the Declaration, the First Supplement must first be approved by two-thirds (2/3) of the Class A Members of the Greenbriar HOA*. . . . If two-thirds (2/3) of the Class A Members do not approve the First Supplement, then this Agreement shall terminate[.]

(Italics added.) In arguing that the district court erred by failing to give meaning to the entire contract, Esposito would have us disregard the explicit HOA voting requirement set out in the 2012 PSA. Automatic annexation of the RV Lot does not appear to have been the intent of the parties because the agreement plainly specifies the steps required to be taken for the HOA to annex the RV Lot.

Therefore, we hold that the district court did not err in concluding that the 2012 PSA required the HOA to vote on and approve the annexation of the RV Lot by a two-thirds vote to give effect to the remaining language of the document. Because the HOA never annexed the RV Lot, an easement, implied or not, was never created.

**B. We need not address the district court's determination that Esposito waived all claims when he signed the 2014 Settlement Agreement because that issue is immaterial to the question of whether the terms of the 2012 PSA defined the means by which an easement could be created.**

Esposito next argues that the district court erred in finding that he waived all claims brought in the instant proceeding when he signed the 2014 Settlement Agreement. The district court concluded that Esposito had waived his arguments regarding the relationship between the 2012 PSA and the purported easement because the language of the 2014 Settlement Agreement plainly said: "[E]ach party does hereby fully and finally release, acquit, and discharge the other party and its officers, agents, employees[,] and representatives from any and all claims, causes of actions,

11

[and] damages which either party has against the other party." The district court further explained that any argument that the 2012 PSA contemplated an easement that could be incorporated by the HOA was ripe at the time of signing the 2014 Settlement Agreement. When Esposito failed to act on that claim and then signed the 2014 Settlement Agreement, he waived any chance to bring it again.

As described in the previous section, the district court did not err in concluding that the 2012 PSA required an affirmative vote of the HOA for the RV Lot to be incorporated into the subdivision. As a result, Esposito's argument that the issue was preserved after 2012 is immaterial. Because it is undisputed that the HOA never voted to annex the RV Lot, we do not need to analyze whether Esposito waived his rights under the 2014 Settlement Agreement.

**C. The district court did not err when it determined that both Esposito and the Bank understood the RV Lot to be landlocked.**

Esposito next argues that the trial court's conclusion that he and the Bank both knew the RV Lot was landlocked is clearly erroneous. The district court found that Esposito and the Bank knew the RV Lot was landlocked because, at the time of its purchase (with the assistance of the private investor), "the bank valued [the RV Lot] at $1.00 and Mr. Esposito paid $1.00 for the parcel." The district court also highlighted the contrast of the price paid for the RV Lot with the price paid for the Mini Storage Lot ($100,000). As a result of the *de minimis* consideration paid for the RV Lot, the district court concluded that both Esposito and the Bank had knowledge of the fact that the parcel was landlocked and, therefore, knew that its value was significantly impaired.

Ultimately, Esposito argues that the district court ignored three key evidentiary details: (1) the language in the special warranty deed; (2) Esposito's testimony that he understood that an easement existed; and (3) the testimony of the Bank's representative that the Bank believed that an easement existed. Esposito argues that those three details demonstrate that neither he nor the Bank believed the parcel to be landlocked and, therefore, the claim that the parcel was landlocked could not be the reason for the diminished price of the RV Lot.

The HOA responds that there was evidence in the record to support the district court's finding that Esposito and the Bank knew the RV Lot was landlocked, and the district court was within its authority to make that finding. First, the HOA points to the testimony of a surveyor who testified at trial that the RV Lot became landlocked in 2005. The surveyor testified that at that time the RV Lot was split from the larger parcel, the remainder of which was later divided into residential lots for Greenbriar Estates, there was no reservation of an easement for the RV Lot.

12

Next, the HOA argues that $1 is a nominal amount for 1.7 acres (the size of the RV Lot), so it was reasonable for the district court to conclude that the reason for the nominal price was because both parties knew that the parcel was landlocked.

We are unpersuaded by Esposito's argument that the district court erred in determining that the Bank and Esposito were aware that the RV Lot was landlocked. The district court's decision in this regard was supported by substantial and competent evidence. First, as noted, the district court heard testimony from a surveyor who explained that the RV Lot became landlocked in 2005 when the parcels were divided, a process in which Esposito participated. Second, a Greenbriar resident active on the HOA board at the time of the 2012 PSA testified that she did not understand the 2012 PSA to grant an easement across Lot 20. Third, the HOA's attorney who had represented the HOA during the previous litigation and during the 2012 PSA testified to the same—that she did not understand the 2012 PSA to grant any kind of access over Lot 20. Fourth, Esposito testified that he paid only $1 for the RV Lot, which comprised 1.7 acres of real property, an amount that, by any measure, was *de minimis*.

While Esposito is correct that the district court also heard evidence to suggest that neither he nor the Bank were aware that the RV Lot was landlocked, the district court's decision is not clearly erroneous. A district court's factual findings will generally be upheld if "supported by substantial and competent, though conflicting, evidence." *Mortensen v. Berian*, 163 Idaho 47, 50, 408 P.3d 45, 48 (2017) (internal citations and quotation marks omitted). Further, "[i]f there is evidence in the record that a reasonable trier of fact could accept and rely upon in making the factual finding challenged on appeal, there is substantial and competent evidence." *Id.* (internal citations omitted).

We acknowledge, as did the district court, that the waste created by landlocking parcels is generally disfavored. However, the establishment of an easement to avoid the creation of a landlocked parcel was contrary to the 2012 PSA. The district court correctly concluded that, based on the terms of the 2012 PSA, the only method to create an easement was by an affirmative vote of the HOA. Further, fashioning a holding that would result in the creation of an easement would not only be contrary to the facts found, but it would also result in a windfall to Esposito who acquired the 1.7-acre lot for $1. Therefore, although the district court heard conflicting evidence, its decision is based on substantial and competent evidence in the record and is not clearly erroneous as urged by Esposito.

13

**D. The district court did not err in quieting title to Lot 20 in the HOA's favor.**

Esposito next argues that the district court improperly quieted title to Lot 20 in favor of the HOA. On this issue, the district court concluded that because the HOA never voted to annex the RV Lot, the 2012 PSA agreement terminated by its express terms and, therefore, the HOA was entitled to quiet title to the lot.

Esposito maintains on appeal that the 2005 CC&Rs granted an easement over Lot 20 for the owner of the RV Lot, and the 2017 amendments to the CC&Rs are insufficient to remove that granted easement. He reargues that, under the terms of the 2012 PSA, the owner of the RV Lot enjoys an easement over Lot 20 that is *not* dependent upon formal annexation and approval by the HOA. Instead, Esposito argues that, as a third-party beneficiary of the 2005 CC&Rs, he may enforce the document because it "cannot be unilaterally rescinded without consent of the beneficiary." Under this theory, Esposito argues that the only way the CC&Rs could have been properly amended to remove the easement would have been if the Bank had also signed the amendment and "surrendered its right of access."

The HOA responds that the 2005 CC&Rs are no longer in effect because they were superseded by a revised version in 2017. In fact, the HOA notes, the Bank's representative worked with the HOA to amend the CC&Rs in 2017. Therefore, the HOA argues, Esposito has no third-party beneficiary claim to the purported easement over Lot 20.

In this case, the HOA was not required to seek approval from possible third-party beneficiaries when amending its own CC&Rs. In *Adams v. Kimberley One Townhouse Owner's Association, Inc.*, this Court explained that a property owner would be bound to amended CC&Rs that restricted the use of his property because the original CC&Rs in place when he purchased the property allowed for amendments by a majority of the owners. 158 Idaho 770, 776, 352 P.3d 492, 498 (2015). Similarly, the 2005 Greenbriar CC&Rs permitted amendments by a two-thirds majority of Class A members of the HOA. Therefore, the HOA had the authority to amend its CC&Rs, and Esposito may not rely on the previous language of the 2005 CC&Rs.

Esposito's reliance on *Twin Lakes Village Property Association, Inc. v. Crowley*, 124 Idaho 132, 857 P.2d 611 (1993) does not support his argument. There, an HOA sought declaratory judgment against certain homeowners within the association who had failed to pay assessments after the bylaws were amended. *Id.* at 133–34, 857 P.2d at 612–13. The amendments included a significant change to the voting structure and "eliminated provisions which forbid [sic] any

14

amendment to the bylaws which would (a) deprive a member of a then existing right or privilege or (b) effect a fundamental change in the policies of the association[.]" *Id.* at 134, 857 P.2d at 613. In *Twin Lakes,* this Court voided certain parts of the amendments because those homeowners had not approved the amendments. *Id.* at 135, 857 P.2d at 614.

By contrast, when the Greenbriar HOA amended its CC&Rs in 2017, Esposito had no interest in the RV Lot, so he did not have a "then existing right or privilege" in the property. *Id.* at 134, 857 P.2d at 613. Instead, when Esposito repurchased the RV Lot, he did so under the updated CC&Rs. In *Twin Lakes*, the parties were not subsequent purchasers or new to the homeowners' association; they were current property owners whose rights in the homeowners' association had been altered during the term of their membership. *Id.* at 135, 857 P.2d at 614. However, Esposito was not a property owner in the Greenbriar subdivision during the time the CC&Rs were amended. Instead, he attempted to acquire the RV Lot essentially as a new purchaser. Therefore, the HOA acted within its authority when it modified its CC&Rs, and Esposito cannot complain that the HOA is erroneously applying the 2017 CC&Rs.

Additionally, Esposito's third-party beneficiary claim fails because, at the time the CC&Rs were amended, the HOA *did* work with the then-owner of the RV Lot—the Bank. The Bank appeared to have been aware not only of the possible easement on Lot 20 but also that the amendment of the CC&Rs precluded the creation of an easement on Lot 20. At trial, the Bank's representative said "I think there's no reference to the RV lot at all. . . . And we removed one specifically from our revisions. That's one of our redlines." The Bank's active role in the 2017 amendment process precludes Esposito from arguing that the HOA acted unilaterally and without regard to a third-party beneficiary. If anything, Esposito was a third-party beneficiary of the Bank. Because the Bank approved the 2017 amendments to the CC&Rs, Esposito has no third-party beneficiary claim. As such, and for the reasons above describing why the 2012 PSA did not create an implied easement, the district court did not err in quieting title to the HOA in Lot 20.

### E. The district court did not err in rejecting the HOA's requests for discretionary costs and attorney fees pursuant to either Idaho Code sections 12-120(3) and 12-121.

The HOA appeals the district court's denial of an award of discretionary costs and attorney fees. The district court awarded the HOA costs as a matter of right but denied its requests for discretionary costs and attorney fees. While the district court found that the HOA was the prevailing party, it denied the HOA's request for discretionary costs to cover the expense of its

expert witness because the use of a surveyor is normal and unexceptional in cases involving property disputes. We find no error in the district court's decision to reject the HOA's request for discretionary costs.

Next, the HOA argues the district court erred in denying it attorney fees under either Idaho Code sections 12-120(3) or 12-121. For the following reasons, we affirm the district court.

1. <u>The district court did not err in declining to award the HOA attorney fees pursuant to Idaho Code section 12-120(3).</u>

The district court denied the HOA's request for attorney fees based on section 12-120(3) because it found that the underlying dispute could not be classified as a "commercial transaction," and any previous commercial transactions between the parties did not "comprise[] the gravamen of the lawsuit."

The HOA makes numerous arguments on appeal challenging the district court's decision. First, it argues that it is entitled to attorney fees under section 12-120(3) either because the 2012 PSA was a commercial transaction and "the gravamen of the bench trial[]" or "because Esposito pled the existence of a commercial transaction in his counterclaim." The HOA argues that the easement dispute was largely settled at the summary judgment stage, and the bench trial was more heavily "focused on Esposito's reliance on the interpretation and enforceability of the 2012 PSA," which was a commercial transaction. In the alternative, the HOA contends that, because Esposito pleaded the existence of a contractual relationship between the parties and then requested attorney fees under section 12-120(3) at the district court, the HOA is also entitled to attorney fees under the statute.

In response, Esposito argues that attorney fees are not awardable to the HOA because the 2005 CC&Rs provision on attorney fees does not include the owner of the RV Lot.[6] Esposito argues that because the HOA requests attorney fees pursuant to the 2005 CC&Rs, any person not defined in that provision (*i.e.*, anyone other than the Declarant, the Association, or an Owner) cannot be liable for attorney fees. Esposito further argues that the gravamen of the suit concerns an easement question, not a commercial transaction, as required by section 12-120(3). As a result, Esposito argues that the district court correctly chose not to award attorney fees pursuant to section 12-120(3).

---

[6] Before the district court, the HOA argued that attorney fees were awardable "under the terms of the 2005 Declaration of Covenants, Conditions and Restrictions for Greenbriar Estates Subdivision (the 'CC&Rs') because Esposito relied [on] those CC&Rs to argue that the CC&Rs gave him access over Lot 20, Block 1."

16

We hold that the district court did not err in finding that the HOA was not entitled to attorney fees under Idaho Code sections 12-120(3). Here, the district court correctly concluded that the underlying dispute was not a commercial transaction for purposes of awarding attorney fees. Instead, the "prior interactions and agreements between the parties . . . were incidental to the determination of present ownership and easement rights." Further, the district court concluded that each party "submitted multiple theories and extensive evidence beyond any commercial transactions to support their claims for relief," making an award of attorney fees under section 12-120(3) inappropriate. We affirm the district court's analysis. While interpretation of the 2012 PSA was necessary for the resolution of this case, the gravamen of the case was an action to quiet title and resolution of a real property dispute, not a commercial transaction. As this Court has previously stated, a "quiet title action [generally] involves the determination of rights[,]" not a commercial transaction. *Merrill v. Gibson*, 139 Idaho 840, 846, 87 P.3d 949, 955 (2004); *see also Baxter v. Craney*, 135 Idaho 166, 174–75, 16 P.3d 263, 271–72 (2000) (holding that determinations of property rights generally do not qualify as commercial transactions) (internal citations omitted). We decline to stray from this line of analysis and will not expand section 12-120(3) beyond our existing case law.

Additionally, we reject the HOA's argument that section 12-120(3) is an appropriate basis for attorney fees merely because Esposito requested his own attorney fees pursuant to section 12-120(3) in his counterclaim that he filed with the district court. Citation to this code provision is not conclusive that a commercial transaction exists. That argument is contrary to this Court's recent decision in *Knudsen v. J.R. Simplot Company*, 168 Idaho 256, 483 P.3d 313 (2021). In *Knudsen*, we considered an almost identical argument to that of the HOA in this case – whether one party "triggered application of Idaho Code section 12-120(3) by requesting fees on that basis in his complaint." *Id.* at 272, 483 P.3d at 329. However, this Court held that a "mere request" was insufficient to trigger the application of Idaho Code section 12-120(3); the requesting party "must show that a commercial transaction was the gravamen of the [claim] before a court may award fees." *Id.* (internal citations and quotation marks omitted). Agreeing with the HOA's argument that "Esposito alleged the existence of a contractual relationship of a type embraced by I.C. § 12-120(3)" when he requested fees under that provision at the district court would all but erase this "gravamen" requirement. *Knudsen* stands for the proposition that a party must do more than simply request attorney fees under section 12-120(3) to trigger its application; "the party

seeking fees *must also* demonstrate a commercial transaction was the gravamen of each claim." *Id.* at 273, 483 P.3d at 330 (italics added); *see also Breckenridge Prop. Fund 2016, LLC v. Wally Enters., Inc.*, 170 Idaho 649, 665, 516 P.3d 73, 89 (2022).

The gravamen of this case was an action to quiet title. The HOA failed to allege or demonstrate how a commercial transaction was the gravamen of each claim. Pointing to Esposito's request for attorney fees at the district court is insufficient to establish the existence of a commercial transaction when the majority of this case has instead hinged on a real property dispute with quieting of title as the goal sought. As a result, we find no error in the district court's rejection of attorney fees claimed by the HOA under section 12-120(3).

> 2. The district court did not err in declining to award the HOA attorney fees pursuant to Idaho Code section 12-121.

The district court also denied the HOA's request for attorney fees under Idaho Code section 12-121 because this case did not have a "clear or obvious resolution," and Esposito's defense of the matter was not frivolous.

We conclude that the district court did not err in declining to award attorney fees under section 12-121. An award of attorney fees under section 12-121 is appropriate only if the losing party "brought, pursued or defended frivolously, unreasonably or without foundation." *Hall v. Exler*, _____ Idaho _____, _____, 517 P.3d 96, 107 (2022). As noted by the district court, this case involved numerous issues without a clear resolution, evidenced in part by the district court's findings that necessitated a trial and granting only partial summary judgment to the HOA. The arguments advanced by Esposito were not frivolous, unreasonable, or without foundation. Instead, the arguments asserted errors of law and insufficiency of evidence. Therefore, the district court properly denied an award of attorney fees to the HOA under section 12-121.

**F. The HOA's request for attorney fees on appeal is denied.**

Finally, the HOA requests attorney fees on appeal. In analyzing the HOA's request, we must first determine which party, if any, has prevailed. While the HOA prevailed in its defense of Esposito's challenge to the district court's decisions relating to the claimed easement on Lot 20, the HOA lost its appeal challenging the district court's refusal to award it attorney fees. Because of this mixed result, we conclude neither the HOA nor Esposito are the prevailing party on appeal. Consequently, we decline to award attorney fees to the HOA. *See Jorgensen v. Coppedge*, 148 Idaho 536, 538–39, 224 P.3d 1125, 1127–28 (2010).

## IV.    CONCLUSION

For the foregoing reasons, we affirm the material decisions of the district court. The district court correctly determined that the terms of the 2012 PSA required the HOA to formally annex the RV Lot to effectuate the easement, which the HOA did not do. We did not reach the question of whether the district court erred in determining that Esposito waived his claims when he signed the 2014 PSA because that question is immaterial after our determination that the 2012 PSA controlled the method of annexation for the RV Lot. We further hold that the district court did not err when it determined that both Esposito and the Bank understood the RV Lot to be landlocked nor when it quieted title to Lot 20 in the HOA's favor. Finally, we affirm the district court's denial of discretionary costs and attorney fees to the HOA, and we deny the HOA's request for attorney fees on appeal. We decline to award costs on appeal given that both parties prevailed in part.

Chief Justice BEVAN, Justices BRODY, MOELLER and ZAHN CONCUR.